# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

ALETHEA L. MILLER HALL,     :
    :
           Plaintiff     :    No. 3:15-CV-1953
    :
       vs.     :    (Judge Nealon)
    :
CAROLYN W. COLVIN, Acting   :
Commissioner of Social Security,   :
    :
        Defendant     :

## <u>MEMORANDUM</u>

On October 7, 2015, Plaintiff, Alethea L. Miller Hall, filed this instant appeal[1] under 42 U.S.C. § 405(g) for review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her application for supplemental security income ("SSI")[2] under Title XVI of the Social Security Act, 42 U.S.C. § 1381, <u>et</u> <u>seq</u>. (Doc. 1). The parties have fully briefed the appeal. For the reasons set forth below, the decision of the Commissioner denying Plaintiff's application for SSI will be vacated.

---

1. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

2. Supplemental security income is a needs-based program, and eligibility is not limited based on an applicant's date last insured.

## BACKGROUND

Plaintiff protectively filed[3] her application SSI on April 30, 2010, alleging disability beginning on April 30, 2010, due to a combination of "Panic Disorder, Anxiety Disorder, and Depression Disorder." (Tr. 73, 136).[4] This claim was initially denied by the Bureau of Disability Determination ("BDD")[5] on September 24, 2010, and Plaintiff filed a request for an oral hearing on September 30, 2010. (Tr. 93-105). On October 31, 2011, an oral hearing was held before administrative law judge Edward Brady, ("ALJ"). (Tr. 46-72). On November 21, 2011, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 75-90). On January 18, 2012, Plaintiff filed a request for review with the Appeals Council. (Tr. 427-433). On November 2, 2012, the Appeals Council denied Plaintiff's appeal and upheld the ALJ's decision. Plaintiff filed an initial appeal with the United States District Court for the Middle District of Pennsylvania, and, on May

---

3. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

4. References to "(Tr. _)" are to pages of the administrative record filed by Defendant as part of the Answer on December 22, 2015. (Doc. 10).

5. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.

2, 2014, the appeal was granted and the case was remanded to the Commissioner for further proceedings. (Tr. 434-452). On April 7, 2015, a remand hearing was conducted before the ALJ, and Plaintiff and impartial vocational expert, Connie Abraham, ("VE"), testified. (Tr. 398-422). The ALJ issued a second decision denying Plaintiff's SSI claims on June 16, 2015. (Tr. 359-374). This decision became final when the Appeals Council failed to act within sixty (60) days. (Tr. 359-374).

Plaintiff filed the instant complaint on October 7, 2015. (Doc. 1). On December 22, 2015, Defendant filed an answer and transcript from the SSA proceedings. (Docs. 9 and 10). Plaintiff filed a brief in support of her complaint on June 5, 2016. (Doc. 14). Defendant filed a brief in opposition on July 5, 2016. (Doc. 16). Plaintiff filed a reply brief on July 20, 2016. (Tr. 17).

Plaintiff was born in the United States on May 28, 1986, and at all times relevant to this matter was considered a "younger individual."[6] (Tr. 133). Plaintiff graduated from high school in 2005, and can communicate in English. (Tr. 135,

---

6. The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). "Younger person. If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2." 20 C.F.R. §§ 404.1563(c).

137).  Her employment records indicate that she previously worked as at several restaurants and retail stores.  (Tr. 137).

In a document entitled "Function Report - Adult" filed with the SSA, Plaintiff indicated that she lived in a house with her family.  (Tr. 531).  From the time she woke up to the time she went to bed, Plaintiff dressed and fed her children and took them to school, cleaned and prepared dinner, picked up her children from school, ate dinner, played with her kids, relaxed, and then went to bed.  (Tr. 532).  Her husband would help her with these tasks on days when she had "a hard time going places."  (Tr. 532).  She had no problem with personal care tasks such as dressing and bathing, and was able to prepare meals, clean, do the laundry, and shop in stores about twice a month.  (Tr. 532-534).  She was able to drive a car, but not unaccompanied due to the fear of having a panic attack alone.  (Tr. 534).  When asked to check items which her "illnesses, injuries, or conditions affect," Plaintiff did not check lifting, squatting, bending, reaching, walking, kneeling, talking, hearing, stair climbing, seeing, following instructions, or using hands.  (Tr. 536).  She explained that she could not stand for too long because it would cause her "to feel panicky."  (Tr. 536).

Regarding concentration and memory, Plaintiff did not need special reminders to take care of her personal needs or to go places, but did need a

reminder to take her medicine. (Tr. 533, 535). She could pay bills, handle a savings account, use a checkbook, and count change. (Tr. 534). She could pay attention for a few minutes, followed written and spoken instructions well, was not able to finish what she started, and did not hand stress or changes in routine well. (Tr. 536-537).

Socially, Plaintiff tried to "go out once a day," visited her mom and dad once a week, and did not go anywhere on a regular basis. (Tr. 534-535). She watched television, listened to music, and played with her children daily. (Tr. 535). She stated that she became annoyed quickly with others. (Tr. 536).

At her remand hearing on April 7, 2015, Plaintiff testified that she was prescribed and had been taking Lexapro for her mental health impairments, including panic and anxiety. (Tr. 406). She testified that she experienced a fear of going places, which is medically termed 'agoraphobia,' because she was afraid she would have a panic attack in public. (Tr. 407). She stated that she was only able to go places when accompanied by her husband due to fear of panic attacks. (Tr. 411). She also stated that she experienced a form of Obsessive Compulsive Disorder that caused her to perform ritual checking. (Tr. 407). She testified that up until a month before her hearing, she did not have health insurance, and she took only natural supplements to treat her anxiety and panic. (Tr. 412). She noted

that she was able to take care of her four (4) young children because she had help when she needed it, but that she did not feel she could respond to needs of those in the "outside world" because there was a lack of help and comfortableness. (Tr. 413). She stated her "comfort zones" included her house, her parents' home, church, and her children's school. (Tr. 414). She described experiencing short-lasting panic attacks that lasted up to one (1) hour, which she stated she would have a few times a week on average, and longer lasting ones that would last up to one (1) month with a feeling of constant dread, with her last one occurring in the summer before the remand hearing. (Tr. 415).

## MEDICAL RECORDS

On August 2, 2010, Plaintiff underwent a consultative examination performed by Stephen Timchack, Ph.D. (Tr. 253). It was noted that she was anxious, fidgety, cooperative, polite, well-groomed, and respectful. (Tr. 256). Plaintiff's self-reported symptoms included feeling sweaty, faint, and dizzy, having a rapid heart rate, feeling a chronic sense of doom and fear, and having an excessive fear of the community and large crowds of people. (Tr. 259). Her mental status examination revealed she had: fleeting eye contact; impoverished recent and remote memory; a highly anxious mood with affect congruent to mood; quick-paced speech consistent to that of an individual with significant anxiety; a

logical and goal-directed thought process; intact sustained attention and concentration; marginally developed insight and judgment for her age; and a low average IQ range. (Tr. 256-258). Her diagnoses included Panic Disorder with Agoraphobia, Cluster B Personality Traits, Orthostatic Hypertension, Tachycardia, and suspicion of Hyperthyroidism. (Tr. 259). Dr. Timchack opined that Plaintiff had a guarded prognosis that would be more favorable if she participated in intensive outpatient psychotherapy and medication management. (Tr. 259).

On August 6, 2010, Dr. Timchack completed a Questionnaire, and opined that Plaintiff had: slight restrictions in her ability to understand, remember and carry out short, simple instructions; moderate restrictions in her ability to understand, remember, and carry out detailed instructions; marked restrictions in her ability to make judgments on simple work-related decisions; moderate restrictions in her abilities to interact appropriately with the public, supervisors, and co-workers; and moderate restrictions in her ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. (Tr. 251).

On August 12, 2010, Joseph Barrett, Ph.D., completed a Psychiatric Review Technique and a Mental Residual Functional Capacity form. (Tr. 261). In the Psychiatric Review Technique, Dr. Barrett opined that Plaintiff had mild

restriction in activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence, or pace; and one (1) to two (2) repeated episodes of decompensation. (Tr. 271). He stated that Plaintiff's exam was within normal limits aside from some "recent memory problems." (Tr. 273). In the Mental RFC form, Dr. Barrett opined that Plaintiff was moderately limited in her ability to carry out very short and simple instructions; to work in coordination with or proximity to others without being distracted by them; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting. (Tr. 273-275).

On September 8, 2010, Plaintiff had an appointment with Adnan Saba, M.D. (Tr. 277-279). It was noted that Plaintiff experienced panic attacks up to three (3) times a week, with some lasting all month, that she felt she got angry easily, that she always felt hot, that she could not stand for a long time because it caused her to feel lightheaded and weak, and that, during a panic attack, her heart would race and she would be short of breath. (Tr. 277). An examination revealed Plaintiff: was anxious-looking; was alert and oriented in all three (3) spheres; had fluent speech; was able to lift and carry up to twenty (20) pounds occasionally; was able to stand and walk for less than one (1) hour; was unlimited in pushing and pulling;

could engage in postural activities; and should avoid extreme temperatures, poor ventilation, humidity, fumes, odors, and gases. (Tr. 278-279). Dr. Saba's impression was that Plaintiff had panic attacks with agoraphobia and possible hyperthyroidism. (Tr. 279).

On September 16, 2010, Plaintiff underwent an Intake Evaluation at Valley Counseling Associates.[7] (Tr. 281). Plaintiff's self-reported symptoms included trouble sleeping, memory problems, low self-esteem, trouble concentrating and making decisions, irritability, anxiety, nervousness, panic attacks, mood swings, anger problems, and phobias. (Tr. 284). Her mental status examination revealed she was cooperative, anxious, had an appropriate affect, had coherent speech and a relevant thought process, had intact orientation and memory, had intact concentration and judgment, had intact insight, and had sufficient self-control. (Tr. 286). Her Axis I diagnosis was Anxiety Disorder, Axis II diagnosis was Borderline Personality traits, and her Axis III diagnosis was hyperthyroidism. (Tr. 286).

On September 23, 2010, Theodore Waldron completed a Physical RFC form. (Tr. 288). He opined Plaintiff could: occasionally lift and/ or carry up to

---

7. Plaintiff had appointments at Valley Counseling Associates until March 2012. However, the notes from these visits are largely illegible. (Tr. 331-357).

twenty (20) pounds and frequently up to ten (10) pounds; sit, stand and/ or walk for about six (6) hours in an eight (8) hour workday; was unlimited in pushing and pulling within the aforementioned weight restrictions; could frequently bend, stoop, kneel, crouch, and crawl; could occasionally climb ramps and stairs, but never ladders; and should avoid concentrated exposure to extreme temperatures, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards.  (Tr. 288-290).

On October 6, 2010, Plaintiff underwent a consultative examination by Lenora Herrmann Finn, Ph.D.  (Tr. 299).  It was noted that Plaintiff was ruminative, socially withdrawn, passively dependent, anxious in all modalities, irritable, and had poor judgment.  (Tr. 299).  Her diagnoses included Anxiety Disorder and Borderline Personality traits.  (Tr. 299).

From January to May of 2012, Plaintiff had appointments at Family Service Association of Wyoming Valley for her mental health impairments.  (Tr. 547-556). The notes from these visits are largely illegible.

From march 31, 2015 to April 7, 2015, Plaintiff had appointments with Shafiq Rahman, M.D., a psychiatrist.  (Tr. 560).  Her mental status examination revealed her appearance and behavior were within normal limits; her speech was normal; her affect was appropriate; her though process was goal-directed; she was

alert and had grossly intact cognition; and she had good insight and judgment. (Tr. 561). She was diagnosed with Major Depression and Panic Disorder with agoraphobia. (Tr. 561).

From March through April of 2015, Plaintiff attended therapy with Holly Guydish, LCSW. (Tr. 564). She was diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder. (Tr. 566). It was noted she had been prescribed Lexapro and had been attending counseling. (Tr. 566). A questionnaire Plaintiff completed noted that, most of the time, she felt nervous, shaky, fearful, and afraid; had a pounding and racing heart; and experienced difficulty at work. (Tr. 567). She noted that she agreed with the statements that she could deal with her problems and was able to accomplish the things she wanted to; that she strongly agreed that she felt good about herself; and that she disagreed that she had friends or family should could count on for help. (Tr. 567).

## STANDARD OF REVIEW

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's

findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a

preponderance.  Brown, 845 F.2d at 1213.  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Further,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process in evaluating disability and claims for disability insurance benefits. See 20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to

return to his or her past work and (5) if not, whether he or she can perform other work in the national economy.  Id.  As part of step four, the Commissioner must determine the claimant's residual functional capacity.  Id.  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.  Id.  "The claimant bears the ultimate burden of establishing steps one through four."  Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

"At step five, the burden of proof shifts to the Social Security Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. "

<u>Poulos</u>, 474 F.3d at 92, <u>citing</u> <u>Ramirez v. Barnhart</u>, 372 F.3d 546, 550 (3d Cir. 2004).

## ALJ DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity from her alleged onset date of April 30, 2010. (Tr. 364).

At step two, the ALJ determined that Plaintiff suffered from the severe[8] combination of impairments of the following: "panic attacks, anxiety, borderline personality disorder, major depressive disorder, anemia, and hyperthyroid disorder (20 C.F.R. 416.920(c))." (Tr. 364).

At step three of the sequential evaluation process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 364-366).

At step four, the ALJ determined that Plaintiff had the RFC to perform light

_____

8. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. <u>Id.</u> An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

work with limitations.  (Tr. 366-372).  Specifically, the ALJ stated the following:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the [RFC] to perform a range of light work as defined in 20 CFR 404.1567(b) except she [is] limited to simple, routine, and repetitive work generally described as unskilled work with an SVP of no more than 2. [Plaintiff] has moderate limitations as to concentration, persistence, and pace as defined by the Social Security Administration.  She can have no interaction with the public and only occasional interaction with supervisors and co-workers.

(Tr. 366).

At step five of the sequential evaluation process, because Plaintiff could not perform any past relevant work, and considering the her age, education, work experience, and RFC, the ALJ determined "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform (20 C.F.R. 404.1569 and 404.1569(a))."  (Tr. 372-374).

Thus, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time since April 30, 2010, the date the SSI application was file.  (Tr. 374).

## DISCUSSION

On appeal, Plaintiff asserts that: (1) the ALJ's "own acceptance of the opinion of consultative examiner Dr. Stephen Timchack directs a finding of

17

disability;" (2) the ALJ erred in rejecting the written statements of Plaintiff's boyfriend; and (3) the ALJ erroneously rejected Plaintiff's testimony based on mischaracterizations and mistakes of law and fact. (Doc. 14, pp. 2-3, 5-16) . Defendant disputes these contentions. (Doc. 16, pp. 11-24).

## 1. Opinion of Dr. Timchack

Plaintiff asserts that the ALJ erred in failing to provide an explanation as to why he implicitly rejected the portion of Dr. Timchack's opinion that Plaintiff has marked limitations in her ability to make simple, work-related decisions by failing to include this limitation in the RFC. (Doc. 14, pp. 5-13).

The responsibility for deciding a claimant's RFC rests with the administrative law judge. See 20 C.F.R. § 404.1546. Affording great weight to an opinion does not mean the ALJ is required to adopt that opinion wholesale. See 20 C.F.R. § 416.927(d); Wilkinson v. Comm'r of Soc. Sec., 2016 WL 482015, at *4 (3d Cir. 2016) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant weight.' On the contrary, the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner.").

Regardless of what the weight an administrative law judge affords to

medical opinions, the administrative law judge has the duty to adequately explain the evidence that he or she rejects or affords lesser weight. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000).

In the case at hand, the ALJ discussed the examination finding as noted by Dr. Timchack, and concludes, "Dr. Timchack gave [Plaintiff] moderate limitations except for making simple work-related decisions. The undersigned gives this opinion great weight in light of the mental status findings." (Tr. 366-367, 372). That is the whole explanation of the weight afforded to this opinion. Plaintiff is correct that the ALJ does not outright reject Dr. Timchack's opinion that Plaintiff had marked limitations in making simple work-related decisions nor does he provide an explanation for not accounting for any limitations resulting from this marked limitation in the resulting RFC. This Court will not speculate as to why the ALJ failed to include this limitation, regardless of the RFC limiting Plaintiff to simple unskilled work. It is well-established that, in reviewing an administrative law judge's decision, the District Court cannot supply its own reasons to explain or support the administrative law judge's decision. Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001). Rather, the District Court is permitted to analyze

only those explanations that the administrative law judge actually provides for in his decision. Id. "In the absence of such an [explanation], the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Burnett, 220 F.3d at 121. As such, this Court is not permitted to review these explanations provided by Defendant in support of the ALJ's decision.

It is noted that, in considering Dr. Timchack's opinion, the ALJ may very well reach the same conclusion. However, in accordance with the Third Circuit precedent established in Fargnoli v. Halter, this Court cannot satisfy its obligation to determine whether substantial evidence supports the ALJ's decision in the absence of an indication that the ALJ rejected or accepted all of Dr. Timchack's opinion because the ALJ did not provide an explanation or account for any resulting limitation in the RFC determination.[9] As such, remand is warranted, and Plaintiff's remaining assertions will not be addressed.

## CONCLUSION

Based upon a thorough review of the evidence of record, it is determined

---

9. It is noted that the ALJ does limit Plaintiff to unskilled work in the RFC; however, it cannot be deduced that this equates to accounting for a marked limitation in Plaintiff's ability to make simple work-related decisions, especially because the vocational expert responses to the RFC hypothetical questions require the ability to reason and make judgments. (Tr. 418-419); See Dictionary of Occupational Titles, General Learning Ability (4).

that the Commissioner's decision is not supported by substantial evidence.

Therefore, pursuant to 42 U.S.C. § 405(g), the appeal will be granted, the decision

of the Commissioner will be vacated, and the matter will be remanded to the

Commissioner for further proceedings.

A separate Order will be issued.

**Date**: May 23, 2017

<div style="text-align: right">

**/s/ William J. Nealon**
**United States District Judge**

</div>